Good morning, Your Honors, and may it please the Court, my name is Ashley Caballero-Daltrey, and I represent the Appellant and Defendant, Deputy Travis Rowden. I'd like to save two minutes for rebuttal, and I'll watch my time. This is a straightforward appeal involving a single use of force after plaintiff failed to give up his hands during an arrest. The District Court, in fact, found that plaintiff posed an imminent and grave threat. The District Court also found that the severity of the crimes at issue in this case justified the use of significant force, which it believed that the punches were. The issue here on appeal started with the question of whether plaintiff had moved his hands prior to those strikes. But plaintiff has now conceded, consistent with the record, that he did, in fact, move his hands. But regardless of the resolution of that issue, Deputy Rowden is entitled to qualified immunity, both because his use of force was reasonable as a matter of law under Graham, and also because no case clearly established the right at issue. In this case, plaintiff shot at the deputies in the forest of Coconino County in pitch black darkness around 3 o'clock in the morning for over 30 minutes. The deputies feared for their lives. As you listen to the video, you can hear them talking to one another about the shots coming past them, how they're taking rounds, that they're worried about the neighboring community. They had already called out the SWAT team to come to the scene to help clear out the neighboring homes to remove potential victims because of the shooting in this case. When plaintiff stepped out of his house, that's the backdrop that we're dealing with, this ongoing active shooter situation. They believed, and the District Court found it was reasonable for them to believe, that there may have been a second shooter, and that there may have been a victim in the house. So there were certainly exigent circumstances here that required... So even if there was a second shooter or a victim in the house, why does that require punching him in the face? Because they needed to arrest him and get him under control so that they could go and find the victim, or go and find the second shooter, and make sure that the neighborhood was safe. He hadn't given up his hands. In fact, the record shows, and plaintiff has conceded, that he moved his hands underneath him. But there's a... If you watch the video, it appears much more that it was like a sudden jerk when the deputy sat on his back, and not that he was... And plus he wasn't wearing a shirt, right? It's correct that he wasn't wearing a shirt. So it seems to me that a reasonable juror could find that he did not intentionally move his arms, and he did not move in a way that would have endangered the deputy or anyone else. So we have to look at the facts in the light most favorable to the plaintiff, correct? Yes, Your Honor. Okay. So why isn't that a permissible viewing of the body cam footage? Because the suspect's intent is not the operative issue in this case. No, but the placement of his hands is, and his hands are still more or less visible up at the top part of his body, not down where he was trying to reach for something. A juror could so find. But a reasonable officer's perspective, a reasonable officer could have believed that as he was moving his hands, that he would have continued to move them and could have reached for a weapon inside of his shorts. So we have to look at it under United States Supreme Court precedent, and this court's precedent, we have to look from the reasonable officer's perspective and look at the totality of the circumstances. But we have to look at the facts in the light most favorable to the plaintiff. I agree, Your Honor, but it's still from a reasonable officer's perspective. And at the time he was first struck, his hands are both visible. But they're still underneath him, and he still hasn't given his hands up. So he is resisting arrest, and the resisting arrest factor is the only factor under Graham that the district court found was there was a question of facts. In the light most favorable to the plaintiff, could the officer put handcuffs on him when his hands were like this? Absolutely not, not while they were underneath him, because he couldn't reach underneath him. He couldn't grab them. He was resisting. He was trying to handcuff him behind him, and so that was why he was trying to grab his hands. In Deputy Rodden's affidavit, he explained that he reached to try and grab his hands behind him, but the plaintiff resisted, and so then his hands were underneath him. He could not effectuate arrest. In your view, I mean, it is pretty clear from the video and I think all the testimonies that he put his hands underneath him in response to the officer putting his knee on his back, right? Yes, Your Honor. And why does that not matter? That it's not, that he was, it seems like it was involuntary, frankly. But even if it's involuntary, it still has to be looked at from the perspective of a reasonable officer on the scene and not with 20-20 hindsight. But the moments, really full minute, so I mean, you do have a very scary situation earlier, but in the minute or so leading up to this, he was following commands. He did everything the officers told him to do, right? He was lying outstretched and half-naked. He would follow some of the commands, but they had to give commands multiple times, and even at the times of the strikes, they're telling him, stop moving. You're still moving. You're not giving up your hands. He wasn't, they weren't able to arrest him, and until they arrest him, that circumstance is still ongoing. They're still worried. Did they think that there was a second shooter at the time? Exactly. They thought there was a second shooter. So they're not perfect safety. Exactly. They thought there was a second shooter. They thought there could have been a victim in the house. The district court found that he did pose a grave and imminent threat at that time. It found that as to both uses of force. And we have to know for review. That's correct, Your Honor. Okay. And the district court said his hands were not underneath him when he was struck. That's correct. Why did that, how did that happen? The district court based that on argument in the response to motions for summary judgment that didn't have any citation to the record. And in fact, when you review the district court's order. So that was an error. Correct. It was an order and the district, or an error, and the district court earlier in its order recognized that plaintiff had said that he moved his hands underneath him. So even reading the district court's order, it acknowledged that. And then later on said, no, he was motionless. But again, the citation was just an argument of counsel. So that was an error. And the district court based its entire ruling on that error. It continued to say that if accepting defendant's facts is true, perhaps he would be entitled to qualified immunity. Should we send it back to the district court to reconsider? I don't think you need to, Your Honor, because. We have to know for review. Because you have to know for review. And also because the district court's decision, if you read it, reads like it would have granted qualified immunity if it weren't for this factual issue that it found. But that doesn't matter either because we have to know for review, right? Yes, Your Honor. Yes. I mean, I think either way, whether you're reviewing DeNovo and find that he's entitled to qualified immunity or whether you say this was never an issue of fact in the first place, you know. It just makes a difference on how you anchor the case. If you start off with, you know, denying based off of clearly erroneous factual understanding, that just kind of changes the trajectory of the case. But even aside from this issue of whether the use of force was reasonable, there's still no case that put him on notice that the right was clearly established, especially if we're saying that he moved his arms because the only case that the district court relied on was Blankenhorn. And in Blankenhorn, the plaintiff was motionless, hadn't been complying. But isn't the question for the jury whether he was resisting arrest or posing any danger and the jury could watch this video? And why couldn't the jury watch this video and think he was not resisting arrest or posing any danger? I think the question that the district court found was whether he had moved his hands. Yeah, but we are not worrying about the district court. We have DeNovo review. We're looking at the record and trying to answer the question we have to answer. And so I'm asking you how to answer that question. I think that the jury has to resolve if there's an issue of fact. And the issue of fact would be whether or not he moved his hands. He did move his hands. And we can resolve the qualified immediate question. But the issue of fact is whether it was reasonable for the officer to believe that he posed an immediate threat or was actively resisting arrest. That's the question for the jury. Yes, Your Honor. Well, in this case. Not whether he moved his hands. I don't think that a reasonable jury in this case could find that he was not resisting arrest because the officers could not handcuff him until after the conclusion of the strikes. The strikes ended as soon as he complied. They were then able to effectuate the arrest. And it's again from a reasonable officer's perspective and not from the subjective intent of plaintiff. If we let every single case go to the jury where plaintiff said, oh, I didn't mean to move my hands. It was just a reaction. Then every single case would go to the jury and we wouldn't have summary judgment in these  But I don't think we only have that here. What we have is a video where you can tell that he moved his hands because of the knee hitting his back. I'm not sure that the video definitively shows that he only moved his knees because of that. And the officers on the scene and their affidavits all stated that they were concerned that he was moving his hands because he could have reached underneath him and that he was, at the end of the day, resisting arrest because he was not giving his hands up to them. I guess, would it be reasonable, basically the question is, would it be reasonable to believe that, for the officer to believe that he was moving his hands not because he was on his, kneeing his back? I think it would be reasonable for an officer to believe he was moving his hands in order to avoid arrest, in order to not be handcuffed. Because he was already not complying with orders. He had already been shot at them. Yes, he had shot at them for nearly 30 minutes. So against that backdrop and looking at the totality of the circumstances which the court is required to do under Graham, I think it's perfectly reasonable for the officers to believe that he was resisting arrest at that time. And again, this takes us also very far away from Blankenhorn because in Blankenhorn the person was motionless, the person was calm, it was a misdemeanor trespass. There's no case on point that deals with this extremely severe issue of over 30 minutes of a tense standoff when then the person is not submitting to arrest and cannot be handcuffed. There just isn't a case on point. But you're taking the facts in the light most favorable to the officers by saying that he was resisting arrest. That's the question the jury has to answer. And if they could reasonably look at this video and say he was not, then that's the factual backdrop we have for answering the legal question, isn't it? But we would still need a case on point that discussed someone who involuntarily moved their hands and said an officer is not entitled to use force even if the person is involuntarily moving their hands. Because Blankenhorn involved a fact pattern where the person was in fact motionless. But we've all said that the video shows that he did in fact move his hands. We're now talking about intent. If he was not resisting arrest and not posing a danger, then they can't use force, right? Right. But he did pose a danger in this case. But that's, I mean, we're sort of in a circular discussion because we have to look at this in the light most favorable to the plaintiff. And a jury might not ultimately do so, but that's our job on summary judgment. And so if he's not resisting arrest and he's not posing an immediate threat, then what force, if any, is allowed? And punching in the face is not allowed in that situation. I mean, Andrews v. City of Henderson, I think, talks about what Blankenhorn establishes, which is that you can't use force if a person is neither posing an immediate threat nor resisting arrest. But I think that gets dangerously close to the fact that Blankenhorn itself based its holding completely on Graham. But cases like Casella v. Hughes have said Graham itself and the parameters of Graham do not clearly establish law for the future. There has to be a case on point. Well, there are Ninth Circuit cases, I just mentioned a couple, that if we take the facts in the plaintiff's favor, he was not resisting arrest and he was not posing a threat. And in that situation, we have cases that say you can't punch somebody in the head when they're not a danger and they're not a threat. But you also have to look at the totality of the circumstances of those cases. In Blankenhorn, the person was only arrested for a misdemeanor trespass. The officers had known he had a history of being a threat. So the difference is if you have a motionless person who's shirtless, who's lying on the ground and something bad happened earlier, you get to punch them. Whereas if something not so bad happened, you can't punch them. That doesn't seem like what our cases would say. He wasn't motionless. He moved his hands underneath him. Well, but your theory seems to be that because really bad things happened earlier, that sort of gives a free punch later on when that danger is dissipated. Well, that's the gram factors, isn't it? Yes, Your Honor. It does get to the gram factors. And ultimately, you have to look at the totality of the circumstances. And the fact that this horrible thing happened earlier on is part of why it's so reasonable for the officers to believe that he had moved his hands to... Can I ask a question? I don't think the jury is asked, will ever be asked, did he resist arrest or did he pose a danger? The jury would only be asked, was the officer reasonable in thinking that he would pose a danger or resisted arrest? Isn't that correct? Isn't that the precise jury question? That's correct because it has to be from the reasonable officer's perspective, not from the suspect and not from a reasonable person generally, but a reasonable officer. So it's wrong to say that the jury could find he resisted arrest, I mean, that he didn't resist arrest. They would never be asked that. Correct, Your Honor. I'd like to save the rest of my time for rebuttal unless you have any other questions. Thank you. Good morning, Your Honors. Counsel. My name is Wendy White. I'm here on behalf of the plaintiff, Apollie Daniel-Cluse. I think it's fair to say that this court knows it has de novo review. So I won't discuss that. There's one fact that wasn't discussed in the district court's opinion and that hasn't been mentioned here and it is in dispute and it is material to the issues involved. And that fact is that the officers, when they arrived, they actually arrived in stealth mode. I don't know if any of you have been to the wooded northern Arizona regions, but it was as described by the officers themselves as well as in the factual statements in the summary judgment as well as in the briefs. It's dark. There was no light. The officers chose to arrive in the middle of the night without lights on, completely black. Now, why is this important? Yeah. Exactly. So the problem is that when they got out of the car and the first shots came towards them, they did not announce their presence. They never announced their presence and they never issued any commands or attempts to speak with the shooter at all for 30 minutes. Were they on the shooter's property at the time? They were off the property. They were... So how does that make a difference? That you can't just shoot at someone just because they're outside in the dark if they're not on your property. The reason why police were called is because an intruder had attempted to come into Daniel Cluse's property shortly before that, which was the circumstance surrounding the call. Is there had been an intruder?   I thought he was the intruder. No. No. Not totally, not. He owned the house and there was an intruder that came in. The neighbors called because they heard two people arguing. You can't really be arguing like a self-defense claim here. This isn't a criminal case, but if it were a criminal case, he could. Oh, really? So yes. It's really just atmospherics anyway, though. Aren't we focused on the moments around the punching? Yes. But we are also focused on whether it was objectively reasonable for the officers to believe that he posed a threat to them. And if they didn't announce their presence even... So you agree then that we should consider all the facts leading to the punching, including them being shot at, that it was dark. So that's not improper to consider all the facts, right? No, it's definitely not. I mean, the case law is clear that the court should consider and the jury should consider the totality of the circumstances. So clearly the court should. But there's also a grand factor, or at least a factor to consider, and that's the extent to which the officers themselves have created a danger. And in this case, they failed to actually announce themselves and never directed... Never directed... But just going back one step, asking whether they were off his property. They were on the edge of his property, essentially. And again, under the circumstances, totality of the circumstances, they didn't announce. Rowden shot at him seven times without announcing their presence. And that is undisputed by the facts. What's in dispute is Rowden claims that he yelled, Sheriff's Department. And there's no substantiation for that. His partner, Matkowski, the other officer, deputy, didn't hear him and he was right by him. And our client, in his statements, said he certainly didn't hear anybody yelling or announcing that they were there. Matkowski was a couple feet away. So that's the... But doesn't that hurt your client, frankly? Because if they didn't... It seems like they're just trying to show why it was reasonable for him to not be compliant. No, they didn't ever ask him to do anything. Well, they did at some point. Yeah, until... But he wasn't listening initially, and he wasn't non-compliant for like 30 minutes, correct? No, no, they never asked him to do anything in that 30 minutes. Why did he come out all of a sudden after 30 minutes then? He was looking for the intruders. And it was the middle of the night. It's pitch black. And so he thought he was under attack. And in Arizona, you have the right to self-defense. And so he... So when we get skipping forward to when he was actually asked, when they finally announced, 30 minutes later, they finally announced, oh, by the way, we're here... Well, they didn't say it that way. Sheriff's Department. That's when he immediately put his guns down, came out, fully complied with every command that they gave him. I mean, they were able to see front, back. They were able to see that he was basically naked. They could see that he had... I mean, he had no shirt on. He had socks on. And loose-fitting athletic shorts. And they could see front and back. They had one officer on one side, two officers on the other. They lit him up with... At that point, finally, lit him up with lights. But he... And he was completely compliant. And so then he comes out. He tells them he put his guns down. Tells them that one of them is loaded. Walks backward as directed. Goes... So he had a gun on him. When he came out of the house. Yes, he did. And that's in the record. I think he dropped the gun. He put the gun on the ground. Yes. Yes. Two. There was actually two. He had one in his hand.  So he had two guns when he came out. Yes. And then when did he drop those two guns? As soon as they yelled, Sheriff's Office, put your guns down. And he put his guns down. And he put his hands up. You can see from the video, if you watch the entire video, that he was completely compliant. Now, the defendants claimed that he wasn't. That's a disputed fact. Because, again, when we're looking at the reasonableness in this situation, we're looking at objective reasonableness. And is it objectively reasonable to think that after complying, doing everything that he was told, and being able to see him completely, and the way his shirt fit... He didn't have a shirt. Yes, sorry. I misspoke. His pants, I meant. But you would agree that those pants were baggy enough that he could conceal the weapon in there? I'm not sure that that's true. We know that he was never searched, though. No, I do agree that we certainly do agree that he had not yet been searched. That's correct. But they were able to see him. He did turn around. He had his hands up. And he complied. He lay down on the ground. So next thing that happens, he's lying on the ground, face directed toward the right, cheek on the ground. Again, northern Arizona, cinder roads are extremely sharp. You can hear him yelling, or not yelling, but at least grunting in pain as he's complying and going to the ground. And there's this officer, Stang, now Lieutenant, but then Sergeant Stang, who's standing there with a rifle pointed at his face, two feet away. When Rowden was behind him, couldn't be seen. He couldn't see Rowden. And Rowden comes and jumps with force, landing in his back. No reasonable or objectively reasonable officer would think that a person under those circumstances is going to remain motionless. You know, a 200-pound guy without warning comes and slams their knee into your back and attempts to choke you. What do you mean? So, yeah, so, in the record, there are pictures of finger marks around. And if you look at the, if you look at the video again, you'll see that Rowden's hands actually go to his shoulders and his neck, not attempting to handcuff him. And you have to do it multiple times, but you've got to look at it. And after the fact, Are you that Rowden attempted to choke him? So after, yes, after the fact, if you listen to Daniel Kluze, it's, it's kind of faint, but you listen to him talking to Rowden. And this is the second video that's there. And he says, who were those dumbass kids that jumped on me and tried to choke me before, not much later, actually afterwards. But, but the point being is that there is evidence that Rowden actually went and put his hand around Daniel's neck. Was that before or after the punches? That was before the punches. That's, again, take a look at the video. Pay attention to the moment when, when Rowden drops his knee. So it's like dropping the knee into the back and putting the hands on the neck. I'm not sure this really matters because the knee itself would cause the hands to move. But I don't, I don't remember this choking issue being in your brief. Yes, it actually is in there. I did mention the, the, the statements after the fact. Okay, yes, I think you quoted those,  at least in the description of what we should take from the video, I thought it was focused on the knee on the back. It is more focused on the knee on the back. But the point being is that, you know, again, from an objectively reasonable standard, nobody's going to think that a person's going to remain motionless. And so it was not objectively release, a reasonable. But so, but you can see then he put his hand under his hand, under his body at some point. So he pulled his hands, not, so this is where I think the, the factual issue is, is what you take, what inference can be drawn from, from the facts, right? And so in, in this case, he did not pull his hands or secret them under his body. And that's the issue. It's like the way it's described.  how would you describe it then? So he pulled his hands reflexively. He just kind of pulled his hands reflexively. But where did he pull his hands? Under his shoulders. Okay. No, there is a big difference because he was naked from the top. And, and, and he, Can you ask, could an officer put handcuffs on him when his hands are like that? I don't know. He didn't ever try. You know, he didn't try to put handcuffs on him. He didn't have his cuffs out. So just using your common sense, do you think an officer can put handcuffs on if their hands are like that?  probably not. Right. But I don't think that's the real issue. The issue here is would a reasonably objective officer think that he was a danger, you know, if he's pulling his hands reflexively? Or resisting, right? Or resisting. And so you agree that the jury would never get asked the question, was he resisting arrest or was he a danger? They would get the question, would a reasonable officer perceive him as a danger or resisting? Yeah. Yes. And, and, but there is a difference, you know, because, right. And so he wasn't actually resisting. He wasn't actually, didn't actually pose a danger.  probably right. Just the question is whether or not a reasonable officer would perceive them as that. Objectively. Right. Right. And it's not the subjective belief of Rowden. It's the objective belief. And so under the circumstances, the question is, would he, would an objectively reasonable officer or objectively reasonable belief be that, that he was resisting arrest or pose a danger? And there's a big difference between him pulling his arms under his body as defendant argues it, which would imply that he's going for a weapon versus pulling his arms under his shoulders, which shows just a reflexive action to pain caused by Rowden himself, jumping and driving his, his spine and, and chest into the ground. And so, again, this court's not to make that decision. But there, the question is, can a reasonable jury infer from that that it was not reasonable for the officer? So every, given everything you said, I mean, that's completely different than what happened in Blankenship, right? No. I'm sorry, Blankenhorn, Blankenhorn. Right. I don't, no, not really because the question in Blankenhorn was, is a person who has been rendered harmless and is not resisting and is not a threat and in this case not reasonably believed to be resisting or not reasonably believed to be a threat, can you punch him in the face when they're on the ground?  and while the, In Blankenhorn, they specifically said that Blankenhorn did not attempt to prevent the officers from handcuffing him. Right. And, and, and here, you would agree though, it'd be very difficult to handcuff him if his hands are like this on the ground. Yes, it would not have been difficult, however, for the officer to place his knee in the back, pull his hand behind him and cuff him. The reason it was difficult is that the, that Rowden caused the difficulty by jumping into his, into the middle of his back instead of using standard police techniques. That's probably right. So, if the court does not have any other questions, I am happy to let it go. Thank you. I think we have some time for rebuttal. All right. Thank you. I just wanted to take a moment to kind of refocus because plaintiff mentioned a number of things that are sort of irrelevant in this case. Plaintiff does not have a claim based on any alleged choking of, that happened at any point and this idea that plaintiff was shot at, plaintiff doesn't have a claim based on any shooting that happened during that 30 minutes and really whether or not they yelled Sheriff's Office is irrelevant because regardless plaintiff was still shooting at someone. He was still a threat during that 30 minutes   always reasonable as a matter of law. I think we've talked about how we have DeNova review so it doesn't matter. That's correct but no one has appealed that issue and you can't  the rights of the appellant without an  on that particular issue. So this court can't find that that first use of force was unreasonable. It's limited only to the appeal in front of it which is only about that second use of force the strikes. And I think that the totality of those circumstances and those findings matter for the punches as well. So we ask that you reverse the district court's opinion on that matter. Thank you. Thank you both sides for the helpful argument. That case is submitted. Would you like to take a
judges: GRABER, FRIEDLAND, BUMATAY